AMERICAN LOUISIANA PIPE LINE CO., APPELLANT, *v.* KENNERK ET AL., APPELLEES.

(No. 339—Decided April 15, 1957.)

*Messrs. Gebhard & Hogue,* for appellant.
*Messrs. Newcomer & Shaffer,* for appellees.

Fess, J.  Plaintiff appeals on questions of law from a judgment entered upon the assessment by a jury of compensation for property taken for a pipeline easement in the sum of $600 and for damages to the residue of the premises in the sum of $4,050.  Upon plaintiff's motion for a new trial on the ground of newly discovered evidence, by way of remittitur, accepted by defendants, the $600 was reduced to $525 and the $4,050 to $3,325.

Plaintiff brought its proceeding to appropriate a right of way and easement for the construction and maintenance of a

natural gas pipeline across the lands of the defendants. According to the third amended petition, the appropriation is to lay, construct, operate, maintain, alter and replace the pipeline for the transportation of natural gas over, through, upon, under and across the land, together with the right of ingress and egress over and upon the right of way, not over any other of defendants' lands, at all times with necessary machinery, equipment and labor force to enter upon the easement for the purpose of locating, constructing, inspecting, operating, maintaining, repairing, reconstructing, renewing and removing the pipeline.

It is alleged also that the pipeline is 22 inches in diameter and is to be buried below plow depth and so constructed as not to interfere with the proper functioning of existing tile drainage; that the right sought does not prevent the defendants from using the land for any and all agricultural purposes ''which do not interfere with the necessary, proper and convenient use thereof by the plaintiff for the purposes aforesaid.''

The right of way comprises a strip 75 feet wide and 679 feet long (1.17 acres) running generally east and west midway across a 39-acre field on which the owner has raised corn the past several years. It is contemplated that incident to laying the pipe, the plaintiff will dig a trench 34 inches wide and 68 inches deep in the center of the 75-foot right of way. The minimum cover on top of the pipe after installation will be 42 inches. Defendants' evidence tended to show that incident to digging the trench, four rows of 4-inch field tile running north and south and a 12-inch tile running east and west would be temporarily severed but replaced and reinforced by channel-iron supports prior to the completion of the project. Whether the tile will be restored to its former utility is in dispute.

Plaintiff's superintendent estimated that eight days would be consumed in completing the job. The excavation will result in the mixture of hardpan subsoil with top soil which will be piled on one side of the trench. Upon refilling the trench, a ridge or mound of this infertile soil of undisclosed height but sufficient to compensate for subsequent settling will bisect the field. Evidence adduced on behalf of the owners tends to show that the tilling and fertility of this mound or strip will be ma-

terially reduced for a number of years by reason of the mixture of hardpan with top soil, and that cultivation of that part of the field adjacent to the line will be somewhat hampered by such condition.

At the outset it is to be noted that in its legal aspects an appropriation of an easement for an underground pipeline is different from that involved in an appropriation wherein the fee of the owner is taken. According to the great weight of authority in respect to the area taken for an underground pipeline easement, the owner is to be compensated to the extent of the estate taken which is necessarily somewhat less than the value of the area in fee. 38 A. L. R. (2d), 792. This principle has been applied in Ohio. Where the owner retains substantial rights in property taken for an easement, he is not entitled to the value of the land in fee simple. *Dodson* v. *City of Cincinnati*, 34 Ohio St., 276.

In general, the ultimate measure of the permanent damages sustained by an owner from the establishment of a pipeline easement across his premises is the difference between the fair market value of the whole premises immediately before the taking and the fair market value thereof immediately afterward. But in Ohio a distinction is drawn between "compensation" and "damages." Compensation is that amount which will compensate the owner for the estate actually taken or appropriated. Damages is an allowance made for any injury that may result to the residue. 19 Ohio Jurisprudence (2d), 479, Section 68. And in making its award, the jury is required to state separately the value of the land taken and the amount of the damage to the residue. 19 Ohio Jurisprudence (2d), 610, Section 186.

It follows that in the instant case the owners are entitled to compensation for the easement taken. Included as elements in arriving at such compensation are damage to fences, loss of crops, impaired fertility or cost of restoration, inconvenience incident to the use thereof by obstructions or otherwise, and any other loss reasonably attributable to the taking of the easement. Presumably with respect to any special damages which do not necessarily result from the taking, the burden is on the owner to establish such loss. *Tennessee Gas Transmission Co.*

v. *Wolfe,* 159 Ohio St., 391, 112 N. E. (2d), 376; 16 Ohio Jurisprudence (2d), 145, 146, Section 10. In addition to the foregoing elements of damages, the owner is entitled to be compensated for the easement or estate taken, determined upon the usual principle of willing seller and willing buyer dealing at arms length, giving due consideration to the reserved right of re-entry on the part of the condemnor. It is recognized that such a determination involves to a large degree speculation as to future events, but the determination is no more speculative than is frequently present in personal injury and other negligence cases.

At the trial, evidence was received on the theory that the owners were entitled to compensation based upon the present worth of the acreage taken in fee. But in instructing the jury, they were told to ascertain from the evidence received the fair market value of the "easement or rights which the plaintiff seeks, taking into consideration the different easements and conditions which the plaintiff seeks to impose upon the lands of the owners and the use to which the owners of the land may put the same so long as it does not interfere or conflict with the easement or rights which the plaintiff seeks to appropriate." They were also instructed that by fair market value is meant such value as such easement or right would command if sold in the market under ordinary circumstances for cash and assuming that the owners are willing to grant and sell such easement as described and the purchasers are willing to buy. (See *Cities Service Gas Co.* v. *Huebner,* 200 Okla., 521, 197 P. (2d), 985, reapproved instructions in similar pipeline case.)

It is therefore concluded that no error prejudicial to the plaintiff intervened upon this phase of the trial.

Error is assigned to the admission of testimony relating to damages. Opinion evidence as to the amount of damage a landowner will suffer as the result of an appropriation is not admissible. The witness may, however, give his opinion as to the value of the property before, in contrast with its value after, the appropriation. *Atlantic & Great Western Rd. Co.* v. *Campbell,* 4 Ohio St., 583, 64 Am. Dec., 607; *Cleveland & Pittsburg Rd. Co.* v. *Ball,* 5 Ohio St., 568; *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gardner,* 45 Ohio St., 309, 13 N. E., 69; *In re Ap-*

*propriation of Easement for Highway Purposes,* 93 Ohio App., 179, 112 N. E. (2d), 411, as explained in *Rockwell* v. *Ohio Turnpike Comm.,* 98 Ohio App., 199, 128 N. E. (2d), 834; 19 Ohio Jurisprudence (2d), 542, Section 124. A witness qualified to give an opinion with respect to value should be required to state such opinion separately as to the value before and after and also be permitted to testify as to the elements or basis upon which he has formed such opinion. But after a qualified witness has expressed his opinion with respect to the value before and that after the appropriation, we conceive that no harm results from his giving a mathematical calculation of the difference for the benefit of the jury. There were several answers given which did not comport with the established before-and-after rule, but in our opinion such errors were not prejudicial.

Error prejudicial to the plaintiff occurred in the admission of opinion evidence. Four farmers from an adjacent county, none of whom had inspected the particular field and only one of whom had ever observed defendants' farm, were permitted, over objection, to give opinions with respect to the loss and damage that would be suffered by the owners incident to the construction. The following excerpt is typical:

"Q. How many acres do you farm, Mr. Rath? A. Eighty-four.

"Q. Tell us what pipe lines go through and when they were constructed?

"Mr. Hogue: Objection.

"The Court: Overruled.

"Q. Tell us what years they were constructed? A. 1936, 1944, 1954, 1955.

"Q. The first three were Panhandle and the last one American Louisiana? A. Yes, sir.

"Q. Did you farm on those four pipelines this year? A. Yes, sir.

"Q. Basing your opinion upon your personal experience, would you tell us what percentage of yield Mr. Kennerk can expect to receive from the right of way area twenty years after its construction?

"Mr. Hogue: Objection.

"The Court: Overruled.

"A. About seventy-five to eighty per cent."

Over repeated objection, the witness also opined that after twelve years the yield would be fifty to fifty-five per cent; after two years, ten per cent; after one year, would be able just to keep the weeds down—no crop; that so far as cultivating and tilling the ground, within twenty years the owner "would have to drop down a gear in plowing." The witness further testified that the tile drains on his own farm were cut by the plaintiff and were reconstructed by the use of channel iron. He was then asked:

"Assuming that that same type of reconstruction is used in the Kennerk trench, what, in your opinion, will be the condition of the tile system, if any, that exists on the Kennerk farm?

"* * *.

"A. It would be bowed down.

"Q. Tell us what, in your opinion, will be the condition of the tile on the Kennerk farm in the year after construction? A. They won't work that low. * * * Well, the four inch tile in bowing down that much (indicating) eight and nine inches in the middle, the water won't go through there. They will fill up.

"Q. What do you mean, bowing down? A. That channel iron won't hold them up."

The witness further expressed the opinion that if channel irons are installed in the Kennerk farm, they would bow about eight or nine inches.

The general rule of evidence is that the testimony of witnesses upon matters within the scope of the common knowledge and experience of mankind, given upon the trial of a cause, must be confined to statements of concrete facts within their own observation, knowledge, and recollection—that is, facts perceived by the use of their own senses—as distinguished from their opinions, inferences, impressions and conclusions drawn from such facts. Whenever a question is to be determined by common experience, or by inference from particular facts, the determination is to be made, or the inference drawn, by the jury or the court, as the case may be, and not by the witnesses, and it is an established and familiar principle that the opinion or conclusion of a witness is in general incompetent and inad-

missible. 21 Ohio Jurisprudence (2d), 405, 406, Section 400. In cases constituting exceptions to the general rule, nonexpert witnesses are required, so far as practicable, to state the primary facts upon which their opinions are based. 21 Ohio Jurisprudence (2d), 411, Section 405. And since a nonexpert witness cannot be asked to give an opinion upon a state of facts which is shown not to be within his knowledge, his opinion should be confined not only to the facts and circumstances within his knowledge, but to those which he has delineated to the court and the jury. 21 Ohio Jurisprudence (2d), 411, Section 405.

Years ago the Supreme Court of Ohio laid down the rules with respect to the exceptions to the general rule excluding opinion evidence. *Baltimore & Ohio Rd. Co.* v. *Schultz*, 43 Ohio St., 270, 282, 1 N. E., 324, 54 Am. Rep., 805:

"3. Witnesses shown to be learned, skilled, or experienced in a particular art, science, trade, or business, may, in a proper case, give their opinions upon a given state of facts. This exception is limited to experts.

"4. In matters more within the common observation and experience of men, non-experts may, in cases where it is not practicable to place before the jury all the primary facts upon which they are founded, state their opinions from such facts, where such opinions involve conclusions material to the subject of inquiry.

"5. In such cases the witnesses are required, so far as may be, *to state the primary facts which support their opinions.*

"6. Where it is practicable to place palpably before the jury the facts supporting their opinions, the witnesses should be restricted in their testimony to such facts, and the jurors left to form their opinions from these facts, unaided by the mere opinions of the witnesses." (Italics supplied.)

It is obvious from the above excerpt of the testimony that the rules prescribed in the *Schultz case* were ignored. The admission of such testimony likewise violated the rule that an opinion, whether it be that of an expert or nonexpert (see paragraph "5" above quoted from the *Schultz case, supra*), must be an intelligent and reasonable conclusion based upon a given state of facts and be such as reason and experience have shown

to be a probable resulting consequence of the facts proved. *Burens* v. *Industrial Commission,* 162 Ohio St., 549, 124 N. E. (2d), 724. No such predicate was laid for the opinions expressed by the witnesses. Since the same errors occurred in the admission of similar testimony of three other witnesses, such errors are prejudicial to the plaintiff and require reversal of the judgment. *O'Brien, an Infant,* v. *Small, d. b. a. Bell Motor Sales* (App.), 70 Ohio Law Abs., 472, 122 N. E. (2d), 701; *Groves* v. *Freedom Oil Works Co.,* 60 Ohio App., 376, 21 N. E. (2d), 599; *Willys-Overland Co.* v. *Carr,* 8 Ohio Law Abs., 477; *Canfield* v. *Southern Film Exchange,* 14 C. C. (N. S.), 143, 23 C. D., 157; *Cleveland, Terminal & Valley Rd. Co.* v. *Marsh,* 63 Ohio St., 236, 58 N. E., 821, 52 L. R. A., 142; *Tully* v. *Mahoning Express Co.,* 161 Ohio St., 457, 119 N. E. (2d), 831.

It is also to be observed that in the absence of a showing of exact similarity between the manner and results of the construction of other pipelines, a number of miles away from that proposed in the instant case, testimony as to what had transpired as a result of such other construction is too remote and would inject into the trial disputed extraneous issues. 21 Ohio Jurisprudence (2d), 232.

A number of special requests to charge were given on behalf of the plaintiff and the defendants. Upon request of the defendants, the jury was instructed that any present or prospective damage resulting to the remainder in the construction or use of the easement is compensable; also that the jury should adequately and fairly compensate the defendants for such future damage as it might find will be suffered by re-entry. Such requests should have incorporated the phrase, "as you may find is reasonably certain to occur." But on request of the plaintiff, the jury was also told that it must not take into consideration or allow any sums for speculative injury to the residue. Construing the charges as a whole, it can not be held that the error assigned is prejudicial. *Wymer-Harris Construction Co.* v. *Glass,* 122 Ohio St., 398, 171 N. E., 857; *Deckant* v. *City of Cleveland,* 155 Ohio St., 498, 99 N. E. (2d), 609. Cf. *Tennessee Gas Transmission Co.* v. *Wolfe,* 159 Ohio St., 391, 112 N. E. (2d), 376.

Upon request of the defendants, five separate instructions

were given the jury varying in phraseology but to the effect that the plaintiff might at any time re-enter the premises without compensating defendants for damages arising from such re-entry. The giving of this series of charges unduly emphasized the issue and was prejudicial to the plaintiff. *Cincinnati Traction Co.* v. *Nellis,* 81 Ohio St., 535, 91 N. E., 1125; *American Steel Packing Co.* v. *Conkle,* 86 Ohio St., 117, 99 N. E., 89; *National Life & Accident Ins. Co.* v. *Kelly,* 42 Ohio App., 255, 182 N. E., 46.

After entry of the judgment, the plaintiff paid the amount thereof into court pending appeal, entered upon the premises and completed the laying of the pipe. Incident to the work it is alleged, in affidavits in support of a motion for a new trial on the ground of newly discovered evidence, that only two four-inch tile and one six and one-half-inch tile and no twelve-inch tile were severed and replaced. This evidence would refute that of the defendants that four four-inch tile and one twelve-inch tile would be severed resulting in substantial impairment of the drainage of the field. This motion was granted, conditioned on the defendants accepting the remittitur above recited. Inasmuch as the granting of the motion conditioned upon the acceptance of the remittitur was within the sound discretion of the trial court, plaintiff's error assigned thereto is found not well taken.

Other errors assigned are found not well taken or nonprejudicial.

For errors found herein prejudicial to the plaintiff, the judgment is reversed and the cause remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

Deeds and Smith, JJ., concur.