In re Appropriation by the Dir. of Highways.

(No. 213—Decided April 9, 1963.)

Mr. A. A. Klipfel, for appellant, Henry A. Diegel.
Mr. William B. Saxbe, attorney general, for appellee, Director of Highways.

Guernsey, J. This is an appeal by Henry A. Diegel from a judgment in an action in the Court of Common Pleas of Auglaize County, Ohio, initiated by the Attorney General of Ohio on behalf of the Director of Highways under the provisions of Chapter 5523, Revised Code, to appropriate for a grade separation certain land belonging to Diegel.

By specific order of the court and over the objection of Diegel the action was tried to a special jury drawn in the manner prescribed by Section 5519.02, Revised Code, relating to highway appropriations generally.

It is undisputed that the Diegel property consists of two tracts, a one-acre tract immediately adjoining the railroad right of way and a tract of approximately 124 acres bounded on the east by Blackhoof Street (or Hardin Pike) and roughly bisected by Canning Factory Road, an east and west road. Logan, Court and Ohio streets in the city of Wapakoneta dead end near to, or on, the north boundary line of the 124-acre tract, which tract is composed of several adjacent lots and acreages described, from north to south, as follows:

(A) 18.87 acres—lying inside the corporate limits of Wapakoneta, with two dwelling houses at the northeast corner of the tract facing Blackhoof Street.

(B) 57.93 acres—lying between the corporation line and Canning Factory Road, with no structures thereon.

(C) 10.00 acres—lying in the southeast sector of the intersection of Canning Factory Road with Hardin Pike, with canning factory buildings located thereon.

(D) 8.60 acres—lying south of the factory tract, with appellant's residence thereon.

(E) 28.36 acres—lying south of Canning Factory Road and west of tracts (C) and (D).

The one-acre tract was acquired by Diegel for a railroad siding for factory use, but had not been developed for such purpose. In addition to produce grown on the 124 acres, appellant canned produce, principally tomatoes, hauled to the factory from farms throughout the Wapakoneta area.

The grade separation project took 0.13 of the one-acre tract and a swath of 9.05 acres from east to west across the middle part of the 124-acre tract, resulting in all of Canning Factory Road east of its intersection with Hardin Pike being replaced by limited access highway, in the residue of the one-acre tract being left without access to any highway, and in the residue of the remaining land being deprived of access to the new highway except at its intersection with Hardin Pike, which intersection was described as a dangerous intersection by some witnesses.

Four expert witnesses (Lusk, Anderson, Yocum and Stein-

man) testified for the state and Diegel and two expert witnesses (Lockwood and Miller) testified for the landowners. The following values are deducible from their testimony:

| | Value of buildings and land before taking. | Value of land taken. | Damages to residue. | Total of take and damages. |
|---|---|---|---|---|
| Lusk | $118,138 | $4,685 | $ 6,300 | $ 10,985 |
| Anderson | $114,915 | $6,003 | $ 3,700 | $ 9,703 |
| Yocum | $ 90,000* | $5,330 | $ 5,400 | $ 10,730 |
| Steinman | $115,250 | $7,365 | $ 4,100 | $ 11,465 |
| Diegel | $250,000 | - | - | $125,000 |
| Lockwood | $128,933 | $9,148 | $34,993 | $ 44,141 |

Miller    (testified that raw ground for home development in locality is priced at $1,500 per acre and that raw ground for industrial use has "top of $1,000 per acre." Did not testify specifically as to market value of land in question).

Lusk testified that his value before the taking was based on five acres at the factory site at $2,000 per acre, ten acres of potential residential land located outside the city of Wapakoneta along the west side of Hardin Pike and the north side of Canning Factory Road at $1,000 per acre, one acre at Mr. Diegel's home site at $1,000, and 108.77 acres as farm land at $400 per acre. The separate one acre tract he appraised at $500, with the taking therefrom amounting to $65.

It is impossible to determine from the record the exact manner in which Anderson arrived at his valuation, but it may be inferred that, except for the land on which structures were actually located and except for a one-fourth acre tract valued as commercial land at $1,500 per acre and a three-acre tract valued as potential residential land at $1,000 per acre, he valued all the land as farm land at a probable value of $410 per acre.

Yocum testified that he gave "not too much" consideration to valuing the land for subdivision purposes "because it is actually in wrong end of town and there are so many nicer lo-

*It is uncertain from the evidence whether or not Yocum's testimony as to value included the value of the buildings on the land.

cations suitable for subdivision in Wapakoneta"; that he gave "not too much" consideration to valuing the land as a commercial site; that in his theory "land does not become subdivision land until actually subdivided"; that the 18 acres inside the city are zoned for single family dwellings; and that "actually we appraised all of it as farm land."

Steinman testified that in his opinion "the highest and best use of the property" is for agricultural land; that he has classified the land as agricultural; that his "figures fall in line with agricultural price"; that he made his assumptions on agricultural land; and "that is what I saw * * * that is all I appraised."

Diegel testified that he considered the one-acre tract worth from $1,500 to $3,000; that it was his plan to subdivide the 124-acre tract in the future; that the existence of the grade-separation project would prevent the existing north and south streets from being extended to Canning Factory Road; that he valued the 18-acre canning factory site (which includes the eight-acre tract on which his residence is located) at $2,000 per acre; that he considered the 28.26 acres of land to the west thereof valued at $1,000 per acre for residential purposes; that he considered the land bounded on the east by Blackhoof Street and Hardin Pike and on the south by Canning Factory Road as valued at $1,000 per acre; that his canning factory property is worth 50% less today than it was prior to the project; that prior to the project "everything that I have out there right now, be over value of $250,000 for building, boiler, warehouse" (this the jury was ordered to disregard), of which the factory building constituted $175,000, and that now a willing buyer would pay him only $100,000 for the factory building.

Lockwood testified that he valued the land inside the corporation for subdivsion purposes at $1,500 per acre, the land outside the corporation north of Canning Factory Road and west of the highway for commercial and industrial purposes at $1,000 per acre, the 18.6 acres on which the factory and Diegel's residence stand for commercial and industrial purposes at $1,000 per acre, the land to the west thereof as commercial and residential at $1,000 per acre, and the principal take at 8.73 acres at $1,000 per acre, or a total of $8,730.

Miller testified that the highest and best use for the Diegel

property would be for subdivision purposes and that its second best use would be for commercial purposes.

The opinions as to damages to the residue were as various in character and amounts as there were experts testifying.

On this state of the record, the jury arrived at a verdict that the landowner should be compensated in the amount of $5,508 for land taken and in the amount of $7,000 for damages to the residue.

Appellant's first assignment of error, that "the court was without jurisdiction to assign and try this case after completion of the improvement," is based on that part of Section 5523.12, Revised Code, providing that the application filed by the Attorney General "shall contain a prayer to the court to fix a date for such trial within a reasonable time and before the completion of such improvement, as determined in the finding of the director * * * ." Here, the director made no such determination and, although the prayer was in proper form, the matter was not tried until after the completion of the improvement.

Following the foregoing quotation, the statute provides for notice of the filing of the application and then prescribes, "thereupon the court shall assign such claims for trial within a reasonable time." It has long been held that the Legislature may not deprive a court of its jurisdiction to act by placing an arbitrary limit upon the time for hearing; that a court is in command of its own docket and must itself determine when a matter will be heard. See *Schario* v. *State*, 105 Ohio St., 535; *James* v. *West, Admr.*, 67 Ohio St., 28; *Wagner* v. *State*, 24 N.P. (N.S.), 113; and *In the Matter of a Writ of Habeas Corpus for Alice Gribler*, Case No. 1181, Allen County, Third Appellate District of Ohio (unreported). Although the provision of Section 5523.12, Revised Code, as to trial before completion of the improvement relates to the prayer in the application and does not purport to impose a mandatory duty upon the court it would, under the cited authorities, be invalid were it found to be mandatory and jurisdictional. Moreover, were we to hold same jurisdictional, the appellant would himself be deprived of a statutory remedy designed to provide him a means of obtaining compensation and damages for the appropriation.

It is our opinion, therefore, that there was no error prejudicial to the appellant as claimed in the first assignment of error.

Appellant's second assignment of error, that "the court erred in summoning and submission of this case to a special jury," is based on the provision of Section 5523.12, Revised Code, that "the jury shall be drawn and the trial proceed as in civil actions in the Court of Common Pleas." His contention is that this required the court to submit the matter to the regular jury drawn to hear all other civil actions in the court and that it could not submit the cause, as it did, to a jury drawn specially in the manner prescribed by Section 5519.02, Revised Code.

The Supreme Court held, in the early case of *Lamb v. Lane,* 4 Ohio St., 167, that the provision of Section 19, Article I of the Constitution, that "such compensation shall be assessed by a jury," "means a tribunal of twelve men, presided over by a court, and hearing the allegations, evidence, and arguments of the parties." In *State v. Barlow,* 70 Ohio St., 363, the Supreme Court, citing the case of *Huling v. State,* 17 Ohio St., 583, held that the manner of selecting and drawing jurors concerns the public rather than the parties to a cause, provided only that irregularities therein do not result in placing in the box jurors who are disqualified, and that the provisions of law for the selection, distribution and drawing of jurors should be regarded as directory, rather than as mandatory and indispensable.

Indeed, Section 2313.41, Revised Code, with reference to challenges to the array, provides that "no indictment shall be quashed or verdict set aside for any such irregularity [*i.e.,* when the jury was not selected, drawn or summoned as prescribed by law] * * * if the jurors who formed the same possessed the requisite qualifications to act as jurors." There being no showing that the jurors herein did not possess these qualifications, appellant has failed to show prejudicial error in this regard.

Appellant's third assignment of error is that "the court erred in failing to distinguish procedure under R. C. Section 5523.12 from procedure under R. C. Section 5519.02," and he claims that under the former section the Director of Highway's

dispute of the claim of the landowner is to be tried according to the procedure obtaining in civil actions generally, whereas under the latter section the amount due the landowner is determined by the procedure prescribed therein. This may be a distinction without a difference which, however, we are not called upon to decide for a close examination of the record reveals that, for the possible exception of the manner of selecting a jury, of which matter we have heretofore disposed, the trial was conducted generally in conformity with the procedural requirements prescribed by Section 5523.12, Revised Code.

Nevertheless, appellant specifically claims that issue must be joined by answer and that the answer which he filed thus became admissible in evidence. However, appropriation proceedings are essentially in rem and there is no provision for pleadings in the sense of the ordinary civil action. *In re Appropriation by Ohio Turnpike Commission,* 99 Ohio App., 221; *Martin* v. *City of Columbus,* 101 Ohio St., 1; and *Sowers, Supt.,* v. *Schaeffer,* 155 Ohio St., 454. The statutes pertaining to appropriation by municipal corporations provide (Section 719.08, Revised Code), as do the statutes pertaining to grade separation appropriations, that ''the jury shall be drawn and the trial proceed as in other civil actions.'' In *Neff* v. *City of Cincinnati,* 32 Ohio St., 215, relating to a municipal appropriation, Chief Judge Day observed, at page 218:

''The proceeding was under the provisions of the municipal code to appropriate land for public use. Under the Constitution of the state, the owners of land so appropriated are entitled to compensation in money. To obtain the land the law requires an assessment of such compensation to be made by a jury. For this purpose the municipal corporation is required to notify the land-owners of its application; and, upon proof of such notice, as required by law, the court must set a time 'for the inquiry into and assessment of compensation,' by a jury to be impaneled for that purpose. *No pleadings are filed by the parties,* nor is an issue of fact in any form submitted to the jury.'' (Emphasis added.)

We conclude that Section 5523.12, Revised Code, neither requiring nor authorizing an answer to be filed, an answer nevertheless filed does not by such fact alone become admissible in evidence.

Appellant then specifically claims that the state had the burden of proof in this appropriation proceeding. It has been established in Ohio ever since the case of *Martin* v. *City of Columbus, supra* (101 Ohio St., 1), that with reference to compensation for land taken there is no burden of proof. In Ohio, the only established exception to the application of the same rule with relation to the determination of damages to the residue is that which appears in *Tennessee Gas Transmission Co.* v. *Wolfe,* 159 Ohio St., 391, wherein the Supreme Court held that "the *owner* has the burden of proving claimed *special* damage to residue, such as that to underlying minerals." (Emphasis added.) Again, we observe that the *Martin case* involved procedure for an appropriation by a municipality analogous to the procedure here prescribed. It necessarily follows that if Section 5523.12, Revised Code, does not specifically provide to the contrary the rule of no burden of proof is applicable here. Appellant then argues that the statutory provision that the state shall open and close constitutes specific legislative intent that the state shall also have the burden of proof. To the contrary, this statutory provision was itself necessitated by the absence of burden of proof. Had a burden of proof existed the opening and closing would have followed same, so its absence made it necessary for the Legislature to specify which party should have the opening and closing.

Appellant claims also that the rules of law applicable to the "normal appropriation case under R. C. Section 5519.02" are not here applicable because in addition to the ordinary issues of (1) compensation for land taken and (2) damages to the residue, the Legislature has, by the following provision of Section 5523.11, Revised Code, added a third issue:

" * * * The director shall fix a date, not less than twenty days after the date of the last publication of such notice, which date shall be set forth therein, on or before which itemized claims for compensation for land taken and damages resulting from such taking, *or from the making of said improvement,* shall be filed in duplicate, in writing, with the division deputy director in whose district any portion of such improvement lies." (Emphasis added.)

The above quoted provision applies to administrative procedure occurring prior to the filing of an application under

Section 5523.12, "for the determination of the compensation, and damages, or either, of the respective claimants," and for this reason alone would not be controlling as to the issues to be determined by the jury. However, even if considered applicable, in our opinion, since each *taking* arises out of the *making* of a grade-separation improvement, the phrases, "resulting from such taking," and, "from the making of said improvement," as used in Section 5523.11, are synonomous and equivalent, and leave to the jury only the two matters of assessment of compensation and damages as in the usual appropriation case.

Appellant's fourth assignment of error is that "the court erred in rulings on admission in evidence" in certain specified particulars.

The general rule as to the admission and exclusion of evidence in a proceeding to appropriate private property for public use is that set forth in the second paragraph of the syllabus of the case of *Ohio Turnpike Commission* v. *Ellis,* 164 Ohio St., 377:

"In such a proceeding, the admission and exclusion of evidence as to the value of the land and other related subjects rest to a large extent in the discretion of the trial court, and, where it is apparent that such court did not abuse its discretion in these respects and that no prejudicial error has intervened, a reviewing court will not interfere."

We have examined each of appellant's specific claims with reference to the admission of evidence in the light of this rule and in the light of the other evidence in the record and, except as hereinafter noted, it is apparent that the trial court did not abuse its discretion and that no prejudicial error has intervened.

However, over the objection of the appellant the state's witness Anderson was asked and permitted to testify that $9,703 "would be total just and fair award." This amount coincided with the total of the compensation and damages deducible from Anderson's testimony. We can only speculate as to what impact this testimony had on the jury, but the jury was not instructed to ignore it and we must conclude therefore that they took same into consideration in arriving at their verdict. Its intended effect, of course, would be to cause the

jury to give more weight to the testimony of Anderson than such testimony would be-otherwise entitled. If an expert witness were permitted to characterize his testimony in this manner it would be just as logical to permit him to characterize and criticize the amounts testified to by other experts as constituting "unfair and unjust" awards.

In the case of *Fowler* v. *Delaplain*, 79 Ohio St., 279, it was held:

"A question to a witness which calls for his opinion on the precise issue of fact which the jury is sworn to determine from the evidence, is incompetent."

It is our opinion that for an expert witness in an appropriation action to be asked and to confirm his opinion as to value as being a "total just and fair award" likewise invades the province of the jury on the precise issue of fact which the jury is to determine, and that to admit such evidence over objection, constitutes an abuse of discretion by the court and error prejudicial to the appellant.

Appellant's fifth assignment of error relates to matters of which we have heretofore disposed under other assignments of error.

Appellant's sixth assignment of error is broken down into many divisions which have either been hereinbefore treated or, without further discussion, we have carefully considered and find without merit. However, this assignment also includes the general proposition that the verdict of the jury and judgment of the court are contrary to law and against the weight of the evidence. We deem that this proposition deserves further discussion.

The evidence as to damages to the residue was so conflicting that reasonable minds might properly differ as to the conclusions to be drawn therefrom. We cannot say, therefore, on the basis of evidence as to damages alone, that the verdict as to damages to the residue was against the weight of the evidence or contrary to law.

The testimony of the experts, and Diegel, as to the valuation *per acre* of land, exclusive of buildings, for the various uses which they considered, is, by direct testimony or by computation, as follows:

|  | For farm use. | For residential use. | For commercial or industrial use. |
|---|---|---|---|
| Lusk | $400 | $1000 | $2000 |
| Anderson | $410 | $1000 | $1500 |
| Yocum | ? | - | - |
| Steinman | ? | - | - |
| Lockwood | - | $1000-$1500 | $1000 |
| Miller | - | $1500 | $1000 |
| Diegel | - | $1000 | $2000 |

In appropriation cases, the rule of *use valuation* is that stated by the Supreme Court in the case of *Board of County Commissioners* v. *Thormyer,* 169 Ohio St., 291:

"In determining the value of land in an appropriation proceeding, the question to be determined is the worth of the property for any and all uses for which it may be suitable, including the most valuable uses to which the land can lawfully, reasonably and practically be adapted."

See, also, *Frownfelter* v. *Graham,* 169 Ohio St., 309. In the *Thormyer case,* the Supreme Court held, on the facts therein, that it was proper to base compensation for land taken and damages to the residue on evidence of the land's value for commercial use notwithstanding that it was held by the owner under a deed containing restrictions against using the land except for a children's home and against selling it.

The case of *Cincinnati & Springfield Ry. Co.* v. *Exrs. of Longworth,* 30 Ohio St., 108, is also of specific interest in this reference. It was therein held:

"Whether the amount of the owner's recovery shall be ascertained by taking the value of the property as subdivided, or its value for other purposes, is for the jury to determine. If the actual compensation and damages can be more nearly ascertained by taking the value of the property as subdivided, they are authorized to take such subdivision into account, though no legal dedication of the same as a town plat has been made."

It is definitely arguable that the land located inside the corporation limits, subject to and benefited by municipal government, immediately accessible to existing or extended streets

and utilities, and zoned for residential purposes, should be valued for subdivision use, rather than for agricultural use. However, it cannot be determined from the record as to what conclusion the jury arrived at in this regard. Although all of the state's experts testified that its highest and best use was for agriculture, and the landowner's experts testified that it was usable for more valuable purposes, the weight to be given such testimony and the determination of the most valuable use to which it can reasonably and practically be adapted were both for the jury.

Since the land inside the corporation was not included in the land taken it cannot be determined from the jury's verdict as to compensation as to how they valued land excluded from the take, and as the matters which they could have properly considered as to damages to the residue were so variable the verdict as to this amount does not reflect the manner in which the jury valued the land inside the corporation. There therefore is no affirmative showing by the appellant that prejudicial error occurred in respect to the valuation of the land inside the corporation.

The same considerations as to value with respect to the land inside the corporation are not necessarily applicable to land outside. The zoning for residential purposes does not exist, the potentiality of extension of utilities, streets and municipal government, is more remote and the development of the neighborhood may appear relatively slow. The situation outside the corporate limits may indicate that the adaption of the land to more valuable uses than agriculture is neither reasonable nor practical. Again, this is a question for the jury. The only evidence as to agricultural value was not to exceed $410 per acre. If the jury had determined that the sole use was for agriculture, since the take was 9.18 acres its verdict would not have exceeded $3,763. On the contrary, all of the experts agreed that the next higher use value had to be at least $1,000 per acre, and if all of the take was so valued the verdict would have been $9,180. The actual verdict of $5,508 is thus consistent only with a determination that the most valuable, reasonable and practical use of some of the land taken was for agriculture, whereas the most valuable, reasonable and

practical use of the balance of the land taken was either for subdivision, commercial or industrial purposes.

On this state of the evidence, we cannot say that the verdict as to compensation for land taken was against the weight of the evidence.

We conclude, however, that by reason of the prejudicially erroneous admission of evidence heretofore referred to under the fourth assignment of error, the verdict of the jury was contrary to law, and, for such reason only, the sixth assignment of error is well taken. For the same reasons appellant's seventh assignment of error that "the court erred in overruling motion for new trial" is also well taken.

It is, therefore, our opinion and judgment that by reason of these prejudicial errors the judgment of the trial court must be reversed and the cause remanded thereto for new trial and further proceedings as provided by law.

*Judgment reversed.*

MIDDLETON, P. J., concurs.

YOUNGER, J., dissenting. In my opinion, the error relied upon in the majority opinion is not prejudicial.

The witness, a real estate appraiser, testified that the fair market value of the land taken was $6,003; that the fair market value of residue prior to appropriation was $108,912 and after appropriation was $105,212; that the residue was therefore reduced $3,700; and that, therefore, the remaining property was reduced $9,703 in value. The witness's testimony in this regard was clear, explicit and in proper form.

The Assistant Attorney General, in summarizing, then asked, "then in your opinion what would be total, just and fair award?" The witness started to answer, and said, "$97—," but stopped his answer when objection was made. The court overruled the objection and an exception was saved. The witness was then asked, in question form, "$9703?," to which the witness answered, "Right." Admittedly, the question was improper, and if this question and the witnesses's response to it were his only testimony upon the subject I would

286

hold it to be prejudicial, but since the witness had previously testified in proper form and the value he gave in response to such questions was in the same amount as the answer to this question I do not see how a jury could be prejudiced. After all, the question called for an opinion based upon his previous testimony and not for a conclusion or statement of an absolute fact.

I think there is a distinction between this case and the case of *Fowler* v. *Delaplain,* 79 Ohio St., 279, relied upon by the majority. The first sentence in the opinion of the court states:

"The trial court, over the objection of the plaintiff, allowed the defendant to propound *to several witnesses* this question, 'What buildings or structures were necessary to be placed upon this lease in order that the same might be properly operated for oil and gas?'" (Emphasis added.)

This was one of the ultimate facts which it was the province of the jury to answer, and as far as I can gather from the opinion in that case this was the only evidence submitted to the jury upon which it could make a finding of the facts.

In the instant case, there were a number of appraisers who testified, both for the landowner and for the state, and there was abundant testimony given in proper form for the jury to reach a proper conclusion as to the amount of damages.