MASHETER, APPELLEE, *v.* KEBE ET AL., APPELLANTS.

(No. 31571—Decided February 15, 1973.)

Mr. *Howard Fishkin,* for appellee.
Messrs. *Hribar, Conway & Knuth* and *Mr. Salvatore P. Jeffries,* for appellants.

MANOS, J. Stanley Kebe was the owner of a thirty-seven acre undeveloped tract located on the northerly side of Detroit Road in Westlake, Ohio. The Director of Highways acquired sixteen acres through the middle of the property for the construction of Interstate 90 leaving a residue on the north of five acres and a residue along Detroit Road of sixteen acres. Access to the northerly residue was provided by the construction of Clemons Road. The issue of valuation was tried to a jury and Kebe appealed from what he considered an unfavorable verdict.

Valuation of the property was complicated by the unusual zoning. Prior to July 24, 1970, the property was zoned to a depth of 300 feet from Detroit Road for apartment use and the remainder was zoned for single family use. Effective July 24, 1970, the City of Westlake adopted its comprehensive zoning ordinance in which substantially all of the two residues were zoned for interchange services permitting gasoline stations, motels and related uses. Because R. C. 5511.01 limits the power of a municipality to change the zoning within 300 feet of the centerline of a highway, the zoning in the area of the take was unchanged and remained single family. The trial court set the date of take at October 27, 1970, the date the Director entered on the property and ordered the parties to value the property under the zoning existing at that date, namely: single family for the sixteen acres taken and interchange for the residue. Ordinarily, the property should be valued on the basis of the legal uses available on the date of take. *City of Euclid* v. *Lakeshore Co.* (1956), 102 Ohio App. 96; *Board of Education of Wilmington School District* v. *Graham* (1968), 15 Ohio App. 2d 196.

In his first assignment of error, Kebe complains that the court erroneously ordered the parties to value the prop-

erty as of October 27, 1970, with the uses permitted by the zoning existing on that date. We agree that the court erred in directing the parties to apply the interchange zoning, both in considering the value of the property before the take and in considering it after the take.

The uses permitted under interchange zoning, as its designation suggests, are peculiar to super highways. Without the super highways such zoning would not exist. The Mayor of Westlake testified that the City considered the advent of Interstate 90 in adopting its comprehensive zoning plan. In setting forth the intent of its legislative body, Section 1216.10 of the Codified Ordinances of the City of Westlake states:

"to provide *Interchange Services Districts* in convenient areas directly related to the freeway interchanges to serve the needs of through and local motorists;"

Thus, the zoning was a direct result of the construction of the highway and would not have existed without the highway. Therefore, the familiar rule that property taken by condemnation proceedings should be valued irrespective of the effects of the improvement upon it, *In re Appropriation for Highway Purposes of the Lands of Winkelman* (1968), 13 Ohio App. 2d. 125, applies to considering a zoning change connected with and brought about by the improvement.

The property owner is not entitled to an increased value to the land taken resulting from the improvement, *Nichols* v. *City of Cleveland* (1922), 104 Ohio St. 19; *City of Cleveland* v. *Grisanti* (1963), 26 Ohio Op. 2d 423, nor should he be made to suffer for any diminution in value to the land taken resulting from the improvement. *Bekos* v. *Masheter* (1968), 15 Ohio St. 2d 15; *Akron* v. *Alexander* (1966), 5 Ohio St. 2d 75. The rule also applies to valuation of the residue since Section 19 of Article I of the Constitution of the State of Ohio states that there shall be no deduction for benefits to any property of the owner except that the property owner may show that the market value of the residue is diminished by virtue of the use to which the land taken is put by the condemnor, *Rockwell* v, *Ohio Turnpike Com-*

*mission* (1954), 98 Ohio App. 199; 19 Ohio Jurisprudence 2d 545 *Eminent Domain,* Section 125, and the condemnor may show special benefits accruing to the residue of the property. *In Re Appropriation of Easement for Highway Purposes* (1952), 93 Ohio App. 179. Except for the construction of Clemons Road which specially benefited the northerly residue of five acres by preventing it from being landlocked, the exceptions do not apply in this case.

The law of Ohio sets forth two procedures, either of which may be pursued to eliminate the effects of the improvement upon valuation in an appropriation proceeding. The court may determine from evidence adduced at a pretrial hearing that the property has been diminished in value by reason of the actions of the condemnor and set the date of take for valuation purposes at a time preceding the debilitating actions of the condemnor. *Bekos* v. *Masheter, supra; Akron* v. *Alexander, supra; In re Appropriation for Highway Purposes* (1969), 18 Ohio App. 2d 116. Neither party pursued this procedure and, so considering the evidence presented, the court correctly set the date of take.

The other method is accomplished by directing the jury to value the property irrespective of the effects of the improvement upon the property and to prohibit the parties from considering the effects of the improvment in presenting valuation testimony. *City of Cleveland* v. *Grisanti, supra; Nichols* v. *City of Cleveland, supra; In re Appropriation for Highway Purposes of the Lands of Winkelman, supra.* See Justice Paul Brown's dissent in *Bekos* v. *Masheter, supra.*

Both of the parties adopted the latter procedure. Neither of the parties initially considered the interchange zoning in the formulation of their case. Kebe and the real estate expert testifying on his behalf stated that the highest and best use was for apartment purposes. One of the real estate experts testifying on behalf of the Director thought that the highest and best use of the property was for single family residence and the other felt that the highest and best use prior to the taking was development under

the mixed apartment and single family zoning existing prior to July 24, 1970, and that afterwards the property's highest value derived from simply holding it for speculation on some contemplated indefinite future use.

The testimony of the expert testifying for Kebe was striken because the apartment usage suggested by him was not permitted by the mixed single family-interchange zoning existing on the date of take. He then revised his testimony to take into consideration the zoning directed by the court. The reasonable probability of rezoning may have an effect upon market value and may be shown through proper proof. *In re Appropriation of Easement for Highway Purposes—Property of Darrah* (1963), 118 Ohio App. 315. The issue as to whether the evidence in the trial of this matter was sufficient to permit valuation testimony based upon apartment usage is not before us and, therefore, we are not in a position to comment upon it. We find, however, that the property owner was prejudiced because he was required to proceed under the assumption that the uses to which the property could be put were limited under the existing zoning created as a direct result of the freeway.

Kebe's second assignment of error objects to the procedure permitted by the court in which the expert witnesses for the Director of Highways were not compelled to render their opinions of value as to the entire tract before the take and their opinions of the value of the residue, but rather were permitted to testify as to their opinion of the value of the land taken and to state that the residue was not damaged by the taking. The proper procedure to be followed is for the expert to give his opinion as to the value of the property prior to the taking and the value of the residue after the taking. *Ry. Co.* v. *Gardner* (1887), 45 Ohio St. 309; *Cleveland and Pittsburgh Railway Co.* v. *Ball* (1856), 5 Ohio St. 569. *City of Columbus* v. *Zanes* (1964), 120 Ohio App. 229; *American Louisiana Pipe Line Co.* v. *Kennerk* (1957), 103 Ohio App. 133. Holding that it was improper for a witness to state his opinion of the amount of damages arising from an appropriation of property without giving an opinion as to the value of the property before and after

the appropriation, the court in *Ry. Co.* v. *Gardner* at page 322 commented as follows:

"It is too well settled in this state to admit of controversy that the true rule of damages in such cases is the difference in the value of the property affected before and the value after the location of the railroad, and that this is to be determined by the jury in the light of the facts established by the evidence, and not upon the mere opinions of witnesses, except so far as opinions may be received upon questions of value. *Atlantic & G. W. R. Co.* v. *Campbell* (1855), 4 Ohio St. 583; followed and approved in *Cleveland & P. R. Co.* v. *Ball* (1856), 5 Ohio St. 568. In each of these cases witnesses were allowed to testify to their opinions concerning the amount of damages sustained, and in each case this was held to be error and the judgment reversed. The jury is entitled to be informed by witnesses concerning the value of the land before, and the value of it after, the location of the road. These are the primary facts which enable the jury to determine the extent of the injury. If it be contended that when a witness has stated what, in his opinion, is the difference in the value of the land before and after the location of the road, or how much less it is worth after than before, he has substantially stated the substantive fact to be ascertained, the obvious answer is that he is, by this form of inquiry, left to estimate in his own mind the amount of damages sustained, and give this to the jury as the difference in value. There is no assurance that he will, in making his estimate, take into account the actual value, before and after the location of the road. Indeed, there is no assurance that he may have an intelligent opinion of the value of the land affected either before or after such location, except that he has qualified himself, in the opinion of the court, as a witness."

Analogously, it is error to permit a witness to state his naked opinion of the value of the land taken without first considering the value of the entire tract before the appropriation and the value of the residue. By testifying only as to the value of the land taken, the witnesses were not very

helpful to the jury. Their testimony constituted a naked conclusion and invaded the province of the jury on one of the issues on which it was to decide. *Fowler* v. *Delaplain* (1909), 79 Ohio St. 279; *In re Appropriation by the Director of Highways* (1963), 120 Ohio App. 273. R. C. 163.14 requires the jury to determine separately the value of the land taken and damages to the residue. Therefore, after the expert witness has stated his opinion as to the value of the tract and of the residue, he should be permitted to assist the jury by making the mathematical calculations as to the value of the land taken as part of the entire tract and as to the damage to the residue. *American Louisiana Pipe Line Co.* v. *Kennerk, supra.* It is apparent that the witnesses for the state, being unprepared to value the property as a whole under the ruling of the court as to the zoning to be applied, limited themselves to valuing only the take area. The jury was presented through these witnesses with the area that was taken as a single entity without consideration as to the parts from which it was severed by the appropriation. The property owner is entitled to have all of his property considered, both the part taken and the part remaining and, therefore, he was prejudiced by the action of the court in permitting the witnesses for the Director to value only the part taken.

In concluding, we do not mean to cast aspersions on the able judge who tried this case under a complicated and unprecedented factual situation. But having the opportunity of reflection, we feel that error was committed to the prejudice of the property owner and the case is ordered remanded for a new trial.

*Judgment reversed and cause remanded.*

JACKSON and DAY, JJ., concur.