[Cite as *Cuyahoga Cty. Bd. of Commrs. v. McNamara*, 2011-Ohio-3066.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95833**

## CUYAHOGA COUNTY BOARD OF COMMISSIONERS

PLAINTIFF-APPELLANT

vs.

## JOHN MCNAMARA, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 09-ADV-0149087

**BEFORE:**   Sweeney, J., Kilbane, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**    June 23, 2011

**ATTORNEYS FOR APPELLANT**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Dale F. Pelsozy, Esq.
Assistant County Prosecutor
Eighth Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

Warner Mendenhall, Esq.
190 North Union Street, Suite 201
Akron, Ohio 44304

Alyssa M. Keeny, Esq.
P.O. Box 39631
Solon, Ohio 44139



JAMES J. SWEENEY, J.:

{¶ 1}   Plaintiff-appellant Cuyahoga County Board of Commissioners ("the County") appeals a $13,600 damage award in this appropriation action seeking a temporary easement on the front yard of defendants-appellees' John and Mary McNamara's ("the McNamaras") residential property.   After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2}   The McNamaras own and reside on property located at 35750 Bainbridge Road in Solon.   In the spring of 2005, the McNamaras learned that an $11.8 million restoration project was being planned for Bainbridge Road that would require the County, in conjunction with the City of Solon, to take a temporary easement on the McNamaras' property.   The

scope of the easement was "100 foot of frontage * * * coming back approximately 17 feet," where the front yard met the road. The purpose of the easement was to create a temporary two-lane roadway to divert traffic during construction, which was estimated to continue for two years. To accommodate the construction project, a row of ten mature trees that lined the McNamaras' property at the site of the temporary easement had to be removed. At the end of the project, the McNamaras re-acquired their property in its entirety, albeit without the ten trees.

{¶ 3} On July 21, 2009, the County filed a petition for appropriation against the McNamaras, alleging that the parties were unable to agree on the amount of fair compensation to be paid to the McNamaras for the taking. The County's complaint valued the compensation and damages at $3,100.[1] On June 22, 2010, a jury awarded the McNamaras $3,600 as compensation for the temporary easement and $10,000 for damage to the residual property.

{¶ 4} The County appeals and raises two assignments of error for our review.

{¶ 5} "I. "The court erred in instructing the jury as to 'damage to the residue.'"

{¶ 6} A court must correctly state the law when instructing the jury; otherwise, it is "within the trial court's discretion to determine the content of a jury instruction." *Baker v.*

---

[1]At trial, however, the County's expert opined that the value of compensation and damages due the McNamaras was $4,000.

*Cleveland*, Cuyahoga App. No. 93952, 2010-Ohio-5588, ¶28.   However, "[i]f the jury instruction incorrectly stated the law, then a de novo review must be performed to determine whether the incorrect jury instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights."   Id. (citing *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 652 N.E.2d 671).

{¶ 7}   The proper measure of damages to be assessed by a jury in an appropriation action is twofold: "the compensation for the property appropriated and damages, if any, to the residue * * *."   R.C. 163.14.   In other words, a property owner will be compensated for the land taken and for damage to the land not taken.

{¶ 8}   Compensation is based on the fair market value of the land taken, which includes   the "rental" of a temporary easement.   See *City of Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 415, 476 N.E.2d 695.   Damages, on the other hand, are based on injuries to the remaining land resulting from the taking.   "Damage to the residue is measured by the difference between the fair market values of the remaining property before and after the taking.   When determining the fair market value of the remaining property before and after the taking, those factors that would enter into a prudent businessperson's determination of value are relevant."   *Proctor v. NJR Properties, L.L.C.*, 175 Ohio App.3d 378, 2008-Ohio-745, 887 N.E.2d 376, ¶15.

**{¶ 9}** In the instant case, the court defined terms and instructed the jury, in pertinent part, as follows:

**{¶ 10}** "Compensation: Compensation is payment of the fair market value of the property interest taken. Residue: Remainder of the real property owned by the Defendant after severance of the property interest taken. Damages: Damages are the loss in value of the residue of the property because of its severance from the property taken.

**{¶ 11}** "A temporary easement is the right to use an area of land for a limited time and limited purpose. The measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken. The fair market value is the fair rental value for a two-year period.

**{¶ 12}** "In addition to compensation for the property taken, the owner is entitled to any decrease in the fair market value to the residue, or remaining land, that is a direct result of the appropriation. If the remaining land is less valuable because of the appropriation, then you must consider such injury and determine the amount of such decrease in the fair market value caused by the appropriation. This will be the amount awarded for damage to the residue."

**{¶ 13}** In the instant case, the County argues that the court's instructions were erroneous, and "[t]he appropriate standard to be applied is a comparison of the value of the property with trees compared to the value of the property without the trees." We find this to be a correct statement of law regarding damages to the residue. However, the County does

not identify the difference between its proposed standard and the jury instructions given by the court. Upon review, we find the standards are substantively the same and conclude that the court correctly stated the law when instructing the jury regarding the measure of compensation and damages in this appropriation case.

{¶ 14} Although the County's assignment of error purports to challenge the jury instructions, the County extensively argues that "[t]he only issue to be considered is the contributory value of the trees as improvements to the real estate * * * [and] one cannot consider the value of the trees separately." The County cites no legal authority to support the proposition that "contributory value" is a consideration in determining an appropriation award. Without deciding this issue, we note that the jury was not instructed to consider, nor did the jury award damages for, the value of the trees separately. As the merits of the County's argument are unclear, we review whether the $13,600 award to the McNamaras is supported by competent and credible evidence in the record. See *Proctor v. Hall*, Lawrence App. Nos. 05CA03 and 05CA08, 2006-Ohio-2228, ¶39.

{¶ 15} At trial, the McNamaras testified about the value the trees added to their property. Mary testified that they "bought the house with the trees, because we knew it was a busier street, but the trees afforded us protection from all of the things that [come] with a busy street. * * * so without the trees there, it's not what it used to be. It's not pleasant. I worry about the kids playing in the front yard * * *." The trees acted as a "screen" against a street

light and headlights, "muffled the noise" from traffic on Bainbridge Road, shaded and cooled down the front yard, and blocked the view of the traffic. Without the trees, the McNamaras "don't want to use the front yard * * * for any kind of enjoyment." John McNamara testified that the trees, which stood taller than his house, provided privacy and safety, "because they were a physical barrier to any errant vehicles coming off the road. Now there's nothing; a car can go right into my house. That was part of the consideration when we bought the home, is that we knew there was some traffic here, but it had these big trees, so it would be kind of a safety thing." John McNamara also testified that the trees were pretty, but now that "everything is cut down, * * * it's an ugly thing to see every day I come home. It's permanent damage."

{¶ 16} Mary McNamara testified that, in her opinion, the value of their property decreased by $40,000 because of the loss of the trees. Additionally, she testified that $40 per day would be fair compensation for the temporary easement across their front lawn.

{¶ 17} Real estate appraiser Eric Kirk testified as an expert witness for the County. Kirk appraised the County's taking of the McNamaras' property and determined that $800 was fair compensation for the temporary easement, based on 1,694 square feet at $2.30 per square foot and a "capitalization rate" for a two-year period.

{¶ 18} Kirk also determined that there was no residual damage to the remaining property resulting from the taking. First, because "[t]he property sits back a considerable

amount and defers any type of negative impact caused by headlights." And second, in Kirk's opinion, the taking of site improvements, such as trees, caused no damage to the residue of the property, because the trees added "nothing beyond the contributory value."

{¶ 19} Nonetheless, Kirk "determined that there is a specific loss attributable to just the trees." Kirk based his opinion on ten pine trees of various sizes being removed from the McNamaras' property. Kirk testified that the "value [of the land] before the take totaled $137,400. And the value after the take, including the diminished trees and site improvements, totaled $134,200." Kirk opined that the McNamaras were due $3,200 "for the loss of site improvements." Although the County argues that these are not residual damages, it presented evidence of "the difference between the fair market values of the remaining property before, and after, the taking," which is the formula for calculating residual damages. *City of Englewood v. Wagoner* (1987), 41 Ohio App.3d 324, 326, 535 N.E.2d 736.

{¶ 20} Regardless of nomenclature, the County argued that the McNamaras were due $3,200 plus $800 for "rental" of the temporary easement, for total compensation and damages of $4,000.

{¶ 21} The jury awarded the McNamaras $3,600 as compensation for the temporary easement. The evidence in the record regarding the value of this taking ranged from $800 to approximately $30,000 ($40 per day for two years). The jury also awarded the McNamaras

$10,000 for damages to the residue. The evidence in the record regarding the difference in value of the property with and without the trees ranged from $3,200 to $40,000.

{¶ 22} We find that the $13,600 award in the case at hand is supported by competent and credible evidence in the record. See *In re Appropriation of Easements for Highway Purposes* (1961), 172 Ohio St. 524, 526, 178 N.E.2d 787 (affirming a jury verdict in an appropriation case when the "total compensation and damages awarded were well within the range of testimony on those subjects"). Additionally, as stated earlier in this opinion, we find no error in the jury instructions. The County's first assignment of error is overruled.

{¶ 23} In the County's second and final assignment of error, it argues as follows:

{¶ 24} "II. "The court erred in allowing Appellees' testimony of value as it did not give a before and after value and did [sic]."

{¶ 25} The Ohio Supreme Court has held that "much must be left to the discretion of the trial court in the matter of admitting or rejecting evidence relating to the value of appropriated property. Evidence of this character generally goes to the weight of the evidence rather than to its admissibility." *In re Ohio Turnpike Comm.* (1955), 164 Ohio St. 377, 388, 131 N.E.2d 397.

{¶ 26} In general, expert witness testimony is necessary to determine the fair market value of property. See, e.g., *N. Olmsted Bd. of Educ. v. Cuyahoga Cty. Bd. of Revision* (1990), 54 Ohio St.3d 98, 561 N.E.2d 915. However, the "owner-opinion" rule presumes

that owners of personal or real property are "generally quite familiar with their property and its value," and are "permitted to testify on value by virtue of their ownership alone." *Tolkes & Son, Inc. v. Midwestern Indemn. Co.* (1992), 64 Ohio St.3d 621, 625, 605 N.E.2d 936.

{¶ 27} Owner-opinion testimony is an estimate of the property's value and is admissible "although [the owner's] knowledge on the subject is not such as would qualify him to testify if he were not the owner." *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 348, 513 N.E.2d 737 (internal citations and emphasis omitted). Additionally, the *Padgett* Court held that "[t]he weight accorded to such testimony is, of course, a matter to be determined by the trier of fact." Id.

{¶ 28} In the instant case, the County argues that Mary McNamara's testimony that the loss of trees resulted in a $40,000 decrease to her property value was improperly admitted at trial, because there is a "requirement of the inclusion of pre-appropriation and post-appropriation values when an opinion is given regarding the damages to the residue."

{¶ 29} In *Masheter v. Kebe* (1973), 34 Ohio App.2d 32, 36, 295 N.E.2d 429, this court held that when an expert witness testifies about the valuation of property in an appropriation case, it is improper to give an "opinion of the amount of damages arising from an appropriation of property without giving an opinion as to the value of the property before and after the appropriation * * *."

{¶ 30} In light of the Ohio Supreme Court's rulings establishing a difference between expert testimony and owner-opinion testimony regarding property value, courts have held the admissibility of owner-opinion testimony to less stringent standards. *Tolkes & Son*; *Padgett*. The Second District Court of Appeals of Ohio held that property owner Jones's testimony "that his property was worth $11,000 less as a result of the removal of the redbud trees" was properly admitted as "evidence of the diminution in market value." *Jones v. Dayton Power & Light Co.* (Dec. 14, 1994), Greene App. No. 94-CA-49. "Because the 'owner-opinion' rule assumes that the owner is so closely acquainted with the property as to stay abreast of its market value, such testimony does not require a specific foundation." Id. See, also, *Walser v. Dominion Homes, Inc.* (June 11, 2001), Delaware App. No. 00-CA-G-11-035; *Ohio Power Co. v. Ogle*, Hocking App. Nos. 09CA1 and 09AP1, 2009-Ohio-5953; *Amore v. Ohio Turnpike Comm.*, Summit App. No. 25227, 2001-Ohio-1903.

{¶ 31} Accordingly, we find no abuse of discretion in the court's allowing Mary McNamara to testify that, in her opinion, her property lost value because the County removed a row of trees from her front lawn. The County's second assignment of error is overruled.

Judgment affirmed.


It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MARY EILEEN KILBANE, A.J., and
LARRY A. JONES, J., CONCUR