OPINION
{¶ 1} This is an appeal from a judgment entered on a jury verdict determining compensation and damages to the residue in a partial appropriation action brought by the appellant Director of the Ohio Department of Transportation ("ODOT"), in the Fairfield County Common Pleas Court.
 {¶ 2} The subject property consisted of three parcels of land that had been inherited by Defendant-Appellees Keith Dennis, Gary Dennis, and Dean Dennis ("Dennis"), in early 2000. (3T. at 665) ODOT took possession in March, 2003, and the separate appropriation actions were consolidated for trial and heard by a jury in May, 2005.
 {¶ 3} In order to eliminate a traffic hazard created by the increased use of US 33 within the City of Lancaster, ODOT created a 14 mile, freeway style four lane by-pass, through rural portions of southern Fairfield County. (1T. at 93-95; 100). As part of this project, ODOT appropriated 26.362 acres from 144.79 acres of corn and soybean fields near Tarkiln Road and existing US 33 within Berne Township. (Id. at 98-99, 111-112, 114; 3T. at 669). These properties were designated on ODOT right of way and construction plans as Parcels 21, 60, and 47. (1T.at 103).
 {¶ 4} Parcel 21 is a 53.220 acre tract located on the north side of Tarkiln Road that was bisected with a 17.738 acre take. (Id. at 111). Parcel 60 is a 23.010 acre tract located directly opposite of Parcel 21 on the south side of Tarkiln Road. The take area in Parcel 60 is 5.799 acres from its eastern edge, and used for construction of (new) Old Logan Road. (Id. at 114). Parcel 47 is not contiguous with the other parcels, but instead is located approximately one-eighth mile due east of Parcels 21 and 60, where Tarkiln Road dead ends into existing US 33. Parcel 47 is a 68.560 acre tract from which 2.825 acres was taken for construction of new Horns Mill Road. (1T.at 106; 107; 114).
 {¶ 5} The corn and soybean fields of the Dennis property sit atop sand and gravel deposits, which stretch through a corridor from the southern portion of Lancaster down to the well fields in Sugar Grove. (Id. at119-200; 264-65). The property is zoned rural residential and is part of a larger Dennis farming operation. (3T. at 637).
 {¶ 6} Located directly to the north of the Dennis property is a sand and gravel mine operated by Shelly Materials, Inc. ("Shelly"). Shelly is a large mineral extraction company, which operates numerous mines in, among others, Franklin, Delaware, and Licking counties that service the sand and gravel needs of central Ohio. (2T. at 465; 466; 469). Shelly, and its predecessors, have been extracting minerals from that land for at least half a century. (3T. at 670-71). The Shelly property is also zoned rural residential, however, the mining operation predates the adoption of the zoning code and was therefore grandfathered. (Id. at 655). Shelly's sand and gravel operation account for 99% of all the aggregate mined in Fairfield County, averaging 900,000 tons per year. (2T. at 271; 462).
 {¶ 7} Dennis presented the testimony of mining consultant, Uwe Seeler, a mining expert with 30 years of experience in preparing mining plans and obtaining necessary permits from state agencies in order to operate a mine in Ohio. (2T. at 300). In order to lawfully mine the property, Mr. Seeler testified that Dennis would be required to obtain a mining permit and proper zoning. (Id. at 325).
 {¶ 8} Mr. Seeler prepared a mining plan for the Dennis' property and testified that the land was "absolutely" suitable for mining sand and gravel prior to the take by ODOT. (Id. at 327). He further testified, without objection by ODOT, that it was likely that all necessary permits for mining on the property would be obtained from the State. (Id. at 326-27).
 {¶ 9} The Dennis brothers also introduced evidence through James Rivers, who had four decades of experience in the sand and gravel mining industry, including managing sand and gravel operations. (2T. at 364-72). Rivers, based upon a marketing study he conducted, opined that a significant, viable market existed for the sand and gravel reserves on the Dennis brother's property. (Id. at 412-19). Rivers testified that the sand and gravel produced from the Dennis property would participate in the vigorous, six-county aggregate market encompassing the Columbus metropolitan area. (Id.).
 {¶ 10} At trial, the Dennis brothers presented an expert appraiser to testify as to the fair market value of the Dennis property as mineable property. Specifically, Dr. Robert Weiler an appraiser with over forty-five years experience gave detailed testimony concerning the value of the land taken and damages to the three residues. (3T. at 505-557). Mr. Weiler testified that the highest and best use for the Dennis property prior to the take was for sand and gravel mining. In his appraisal, Weiler utilized both a comparable sales analysis as well as a discounted cash flow analysis. Weiler testified that comparable sales of sand and gravel property were in the range of $14,000.00 to $23,000.00 per acre and reached the ultimate conclusion that the value of the property under this approach was $1.47 million. Id. at 550; 553).
 {¶ 11} On a discounted cash flow basis, the value of the take and the damage to the residues on parcels 21 and 60 was $1.053 million, i.e. $417,664.00 for the land taken and $635,542.00 for damage to the residue. (3T. at 521-22; 555-56).
 {¶ 12} Keith Dennis, one of the Dennis brothers, testified that he believed the property was worth $19,000.00 per acre before the take but only $3,500.00 per acre after ODOT took his property. (3T. at 707-09). He therefore placed the value of the take of parcels 21 and 60 at $447,203.00 and the damage to the residue at $767,936.00, for total compensation due for parcels 21 and 60 of $1.215 million.
 {¶ 13} Mike Juniper, the Zoning Inspector for Berne Township, testified that it was likely that a zoning permit would be granted; in part because Shelly was mining right next door and preliminary approval for mining had at the time of trial been given for two additional neighboring parcels. (3T. at 625-26). He stated that the factors indicating a likelihood of a rezoning change would be the existing operation of the Shelly mine next door, and that Shelly had recently made rezoning applications for the Bigham/Kremer properties, which had been recommended for approval by the Regional Planning Commission and the Zoning Commission. (3T at 625-26; 631; 634). On cross-examination, Mr. Juniper admitted that Shelly's mine had predated the zoning code and therefore their existing operations were grandfathered in under the zoning classification. (Id. at 655). Secondly, he admitted that despite the recommendations, the biggest obstacle for those applications still lay ahead — namely, the opportunity for the Township Trustees to hear the comments and concerns of the neighbors. (Id. at 626, 639).
 {¶ 14} Mr. Juniper further testified that the Township Trustees had not yet approved the rezoning applications. (Id. at 656).
 {¶ 15} ODOT presented the testimony of appraiser John Chance. Mr. Chance has been an appraiser for 25 years, and has done over 100 appraisals specifically regarding mineral properties. (3T.at 732; 739; 739). Also testifying for ODOT was appraiser Gerald Clark. Mr. Clark has been appraising property for 19 years, with specific mineral expertise since 1996. (4Tat 971; 975).
 {¶ 16} These experts found that a sand and gravel mine was not the highest and best use despite the quantity and quality of the mineral deposits, because the Dennis property did not have a mining permit, was not zoned for mining, Dennis had no experience in mining, had no equipment to operate a mine, and had no market for minerals in that all of the sand and gravel needs were already being satisfied by the Shelly operation next door. (4T. at 814; 827-29; 885; 887; 992-94; 1015-17). Consequently, the Dennis' had, in fact, been using the property at its highest and best use, namely, agricultural purposes. (Id. at 991).
 {¶ 17} Mr. Chance testified that as of November, 2001, and based on an agricultural highest and best use, Parcels 21 and 60 were valued as $3,500/acre in the before condition, and $2,400/acre in the after condition, yielding a total value of the take and damages to the residue of $148,000. (4T. at 822; 833). Mr. Clark testified that he performed an update to the work that he and Mr. Chance had done, and arrived at a valuation as of the date of take in March, 2003. Mr. Clark testified that as to Parcels 21 and 60, the value was $3,600/acre in the before condition, and $2,200/acre in the after condition, for a total value of the take and damages to the residue of $164,000. (Id. at 1003, 1007; 1014).
 {¶ 18} ODOT sought to introduce testimony with respect to the recent purchases and the rezoning of the Bigham/Kremer properties as evidence of market value of comparable property in the same locale and with the same purpose for which Dennis claimed applied to their property. (Id. at 1017, 1020). However, ODOT ended its attempt to introduce this evidence without requesting a ruling on the admissibility of the sale price evidence from the trial court. (4T. at 1023-24). ODOT never proffered a foundation, nor did ODOT proffer into evidence the sale prices for the Bigham/Kremer properties. (Id.).
 {¶ 19} Based upon the evidence before it, the jury rendered a unanimous verdict on May 9, 2005 in the total amount of $1,253,695.00. The jury broke down this amount on the verdict form into three components: $513,000.00 for the partial take of parcels 21 and 60, $728,500.00 for damages to the residue on parcels 21 and 60, and $12,195.00 for the partial take of parcel 47, and $0.00 for damages to the residue of parcel 47. The Court of Common Pleas accordingly entered judgment in the amount of $1,253,695.00 on July 28, 2005.
 {¶ 20} Appellant ODOT has timely appealed presenting the following two assignments of error for our consideration:
 {¶ 21} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT BARRED RELEVANT PROBATIVE EVIDENCE OF RECENT COMPARABLE SALES ON THE BASIS THAT THOSE SALES OCCURRED EIGHTEEN MONTHS AFTER THE DATE OF THE TAKE.
 {¶ 22} "II. THE JURY AWARD WAS NOT BASED ON COMPETENT CREDIBLE EVIDENCE."
 I. {¶ 23} In its first assignment of error, appellant argues that the trial court committed prejudicial error by excluding evidence of sales of land other than the Dennis' property which took place 18 months after the date the Dennis' property was taken. Appellant contends this evidence was admissible as "comparable sales" for purposes of establishing market value of the Dennis' property.
 {¶ 24} "The decided weight of authority supports the proposition that much must be left to the discretion of the trial court in the matter of admitting or rejecting evidence relating to the value of appropriated property. Ohio Turnpike Commissionv. Ellis (1955), 164 Ohio St. 377; City of Columbus v. Wilcox
(1975), 46 Ohio App. 2d 129". City of Canton v. George (April 22, 1985), 5th Dist. No. CA-6496.
 {¶ 25} We agree that, in general, "[i]n appropriation proceedings, it is error for the court to exclude, on direct examination of one's own expert witness, evidence of sales prices of other comparable real property as substantive proof of the fair market value of the property to be appropriated, where such sales were concluded between purchasers who were willing, but not required, to buy and sellers who were willing, but not required, to sell". Masheter v. Hoffman (1973), 34 Ohio St.2d 213,298 N.E.2d 142, para. 1, syllabus. Absent a clear abuse of discretion, the question concerning evidence of this character is not one of admissibility but rather one of weight. City ofCanton v. George, supra. (Citing Foster v. United States (8th Cir. 1944,), 145 F.2d 873).
 {¶ 26} We further agree that there is no absolute rule which precludes consideration of subsequent sales. See, United Statesv. 320.0 Acres of Land (5th Cir 1979), 605 F.2d 762, 799-800.
 {¶ 27} However, the purchase price of comparable property is not competent evidence where the purchase date is so remote in time so as not to have any tendency to reflect the current market value of the property to be appropriated. United States v. 320.0Acres of Land, supra at n. 62; 68.
 {¶ 28} For the reasons which follow we find appellant has waived any error in the trial court's exclusion of "comparable sale" prices.
 {¶ 29} The touchstone of admissibility is whether the evidence is so remote, speculative, or subject to extraneous circumstances, that, even if otherwise relevant, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury; if so, the evidence will be excluded under the parameters of Evid.R. 403(A). When considering evidence under Evid.R. 403, "the trial court is vested with broad discretion and an appellate court should not interfere absent an abuse of that discretion." Accordingly, we will not reverse the trial court's decision absent an abuse of discretion, which implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises, Inc. v.River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157, 161, 553 N.E.2d 597.
 {¶ 30} A trial court, before permitting evidence of the "comparable sale" price, should require the party offering such evidence to show that:
(a) The sale was between a willing seller and a willing buyer, neither of whom is required to buy or sell;
(b) It was an `arm's length' transaction;
(c) It is sufficiently similar in construction, size, location, date of sale, age, condition, and use so as to make it comparable to the property being appropriated. Masheter v. Hoffman,34 Ohio St.2d 213, 298 N.E.2d 142.
 {¶ 31} At trial, the appellant failed to properly seek the admission of and, further, failed to properly proffer a sufficient foundation for the admissibility of, the Bigham/Kremer "comparable sales" price evidence.
 {¶ 32} During the questioning of its expert appraiser John Chance, appellant attempted to elicit the sale prices of two parcels of property adjacent to the Dennis' property know as the Bigham/Kremer proprieties. (4T. at 1019). Appellees objected and thereafter a side-bar conference took place with the trial judge. (Id. at 1019-1023). Upon hearing arguments from both parties concerning the admissibility of the sales prices of the Bigham/Kremer properties, the trial court stated: "[w]hy don't you move on to something else. Let me think about that." (Id. at 1023). Appellant's counsel then stated "[w]ell, I was really going to end there." (Id.).
 {¶ 33} In the case at bar, appellant did not request a ruling by the trial court upon appellees' objection to the introduction of the Bigham/Kremer comparable sales price evidence. Upon being informed that the trial court was going to defer ruling, appellant's counsel requested a pause in the proceedings. (4T. at 1023-24). After a short break, appellant's trial counsel resumed by informing the court he had no further questions of the witness. (Id. at 1024). Thereafter, appellee's commenced cross-examination of Mr. Chance. (Id. at 1024-1054). Appellant's counsel did not request a ruling by the trial court prior to or during his re-direct examination of Mr. Chance. (Id. at 1054-1060). Accordingly, the trial court could reasonably conclude that appellant had withdrawn its attempts to elicit testimony or evidence concerning the Bigham/Kremer sale prices.
 {¶ 34} However, appellant argues that upon the conclusion of Mr. Clark's testimony, the bailiff collected written questions from the jurors. (Id. at 1063-64). Among the questions posed by the jurors was the following "What did Shelly pay per acre for the 16-acre property purchased next to the Dennis property? How was that property zoned? And had it previously been used for farming?' (Id. at 1064). In response to appellant's request that the witness by asking those questions the trial court responded "[o]ver — we're not going to even ask that question, it will confuse them." (Id. at 1064).
 {¶ 35} We fail to find any proffer of proof in the record showing that the Bigham/Kremer properties bought by the Shelly mining company and sought to be introduced as "comparable sales" were similar in character so that the price paid could have been of any assistance to the jury in determining the market value of the subject property on that basis. Nor was any proffer made to establish the sale price of the Bigham/Kremer properties. "From this situation, it becomes apparent at once that without additional facts, we would be unable to conclude that the omission of this evidence would have the probable effect of changing the amount of the award. It is probably true that had this evidence been admitted, a further examination of the witnesses would have drawn out in full detail the matters which we now find are omitted. This possibility or even probability is not sufficient. Presumptively the finding of the jury is correct. It devolves upon the complaining party to demonstrate that the error complained of in all probability had an effect upon the jury's determination of an award. In order to be prejudicial there must be sufficient proffer to not only show the competency of the testimony but also the possible effect upon the ultimate finding". Ornstein v. Chesapeake O.R. Co. (1937), 26 Ohio Law. Abs. 78, 36 N.E.2d 521, 525-26. See also, City of Akron v.Hardgrove Enterprises, Inc. (1973), 47 Ohio App.2d 196, 200,353 N.E.2d 628, 632. [Proper foundation not laid; "The bald, unsupported statement of a witness that a sales price is comparable does not make it so".]; Masheter v. Hoffman (1973),34 Ohio St.2d 213, 214, 298 N.E.2d 142, 143. [After objection to evidence concerning the sales prices of comparable property was sustained, counsel proffered testimony consisting of statements that the other properties were `generally comparable,' and as to the dates of sale, location, parcel numbers and lot sizes of the comparable property. And further, the witness related the same information concerning the `market data' of the other properties and answered in the affirmative a question as to whether these properties were comparable to that in question].
 {¶ 36} In United States v. Reynolds (1970), 397 U.S. 14,90 S.Ct. 803, the Supreme Court noted: "[t]he Court early recognized that the `market value' of property condemned can be affected, adversely or favorably, by the imminence of the very public project that makes the condemnation necessary. And it was perceived that to permit compensation to be either reduced or increased because of an alteration in market value attributable to the project itself would not lead to the `just compensation' that the Constitution requires". Id. at 16-17, 90 S.Ct. 805.
 {¶ 37} Without a proper objection and a proffer we are unable to conclude that the trial court excluded the evidence. Assuming arguendo that the trial court did exclude the evidence, without a proffer we cannot conclude that it was an abuse of discretion to exclude evidence of sales occurring 18 months after the taking of the Dennis' property. Any alteration in market value may have been attributable to the project itself or to facts making the properties dissimilar in character. Further, the trial court could have reasonably concluded that the purchase date 18 months after the Dennis' property was taken is so remote in time so as not to have any tendency to reflect the market value of the Dennis' property. The record contains no demonstration that the error complained of in all probability had an effect upon the jury's determination of an award.
 {¶ 38} Accordingly, appellant's first assignment of error is overruled.
 II. {¶ 39} In his second assignment of error, appellant argues that the jury verdict is not based upon competent credible evidence. We disagree.
 {¶ 40} Appellant argues that the record does not contain competent credible evidence as to the likelihood of a rezoning change by Berne Township to allow mining of the subject property and further that there was no evidence presented concerning the likelihood of obtaining certain permits incident to conducting a mining operation.
 {¶ 41} Appellant first contends that the trial court erred by admitting into evidence applications for the Bigham/Kremer properties submitted after the date of the take of the Dennis' property to rezone those properties to allow for mining.
 {¶ 42} Appellee presented the testimony of Mike Juniper, Berne Township Zoning Inspector concerning the likelihood that the Dennis' property would be rezoned to permit mining. (3T. at 621). One of the factors that led Mr. Juniper to the conclusion that rezoning of the Dennis' property was a possibility was the fact that Shelly mining had recently made rezoning applications for the Bigham/Kremer properties adjacent to the Dennis' property. (Id. at 626; 628; Defendant's Exhibit P). Appellant's counsel initially objected to Mr. Juniper's testimony concerning the rezoning applications. (Id. at 628-29). However, after a five minute recess, appellant withdrew his objection. (Id. at 629-30). Thereafter Mr. Juniper testified concerning the rezoning applications. (Id. at 630-36). Appellant cross-examined Mr. Juniper concerning the rezoning applications. (Id. at 638; 643).
 {¶ 43} Appellant withdrew its objection to the testimony of Mr. Juniper concerning the rezoning applications for the Bigham/Kremer properties. Accordingly, appellant has waived any error concerning the testimony.
 {¶ 44} The admission or exclusion of evidence rests in the sound discretion of the trial court. Tate v. Tate, Richland App. No. 02-CA-86, 2004-Ohio-22, ¶ 63, citing State v. Sage
(1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. Nonetheless, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and in case the ruling is one admitting evidence, a timely objection appears in the record stating the specific ground of the objection, if the specific ground was not apparent from the context. Stark v. Stark, Delaware No. 01CAF06020, 2002-Ohio-90, citing Evid.R. 103(A) (1).
 {¶ 45} Appellant did object to the admission of the documents into evidence. (5T. at 1142). However, the applications were cumulative to the testimony and thus any error in the admission of the documents into evidence is harmless. Appellant has failed to demonstrate how admission of the documents had an effect upon the jury's determination of an award.
 {¶ 46} Accordingly, we find appellant's argument concerning the rezoning applications submitted after the date of the take of the Dennis' property waived on appeal. This Court also has the availability of reviewing this assigned error under a plain error standard. However, in the civil realm, the doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself." See Goldfuss v. Davidson, 79 Ohio St.3d 116, 122,679 N.E.2d 1099, 1997-Ohio-401. Upon review of the record, we find a sua sponte invocation of the doctrine of plain error unwarranted in the case sub judice.
 {¶ 47} Appellant next contends that only existing zoned uses may be considered as the basis for market value of the Dennis' property in the absence of evidence that is reasonable and probable that applicable zoning will be changed in the foreseeable future. (Corrected Brief of Appellant at 21). This is not a correct statement of the law.
 {¶ 48} In Masheter v. Kebe (1976), 49 Ohio St.2d 148,359 N.E.2d 74, the state sought to appropriate a 16.1 acre strip of land running through the middle of Kebe's property in order to construct a segment of I-90. Before the take, the entire parcel was zoned for residential use under a comprehensive zoning ordinance adopted by the City of Westlake in the 1950s. In July of 1970, the city re-zoned Kebe's property in anticipation of the expected road project. It changed most of the zoning for the property above and below the proposed appropriation to highway interchange use. It did not alter the residential classification of the middle strip, which the state would take in fee.
 {¶ 49} At trial, Kebe sought to introduce the valuation testimony of two experts. Each thought the highest and best use of the property would be for multi-family apartment complexes, and determined the fair market value of both the appropriated strip and the remaining lots on that basis. Neither had evidence that the zoning classification was likely to change in the near future. The trial court ordered that their testimony should be restricted to the existing zoning regulations at the time of the take, i.e., residential use and interchange use, respectively. While on the stand, the experts were directed to re-evaluate the property under the court's restrictions. Kebe appealed.
 {¶ 50} The court of appeals reversed. Masheter v. Kebe
(1973), 34 Ohio App.2d 32. The Supreme Court of Ohio affirmed the judgment of the court of appeals, but on different grounds. The Supreme Court analyzed the testimony of the experts in relation to the appropriated strip, for which the city did not change the zoning classification. The court held that the experts' testimony, which rested on a use that was not permissible under the 1950 zoning ordinance, was nevertheless admissible. Id. at 152.
 {¶ 51} In response to the state's second assignment of error claiming, as was required under prior law, that such testimony should have been inadmissible because of the lack of evidence of a likely change in zoning in the foreseeable future, the court stated:
 {¶ 52} "Although existing zoning restrictions necessarily constitute an important factor for the appraisal witnesses to consider in connection with the market value of the land, itmust be recognized that, as a practical matter, the existingzoning regulation does not and may not control that market valueof the property involved." (Emphasis added.) Id. at 153. The court concluded "[i]f, in the opinion of an expert appraisal witness, an informed, willing purchaser would be presently agreeable to pay more than an amount justified under existing zoning, such evidence is admissible because it reflects upon the fair market value of the property." Id.
 {¶ 53} Under Kebe, an expert need not confine his valuation testimony to the use permitted under existing zoning regulations.Wray v. Stvartak (1997), 121 Ohio App.3d 462, 477,700 N.E.2d 347, 355; Wray v. Mussin (Sept. 20, 1996), 11th Dist N. 95-L-172; Weir v. Kebe (Apr. 15, 1982), Cuyahoga App. Nos. 43722, 43723, unreported. Additionally, the expert may testify as to a highest and best use that is not permitted under existing zoning regulations even without evidence of a probable change in zoning within the foreseeable future. Wray v. Stvartak; Wray v.Mussin, supra.
 {¶ 54} In the case at bar, there was conflicting evidence concerning the likelihood of a zoning change to permit mining on the subject property. ODOT's valuation experts, Mr. Chance and Mr. Clark, testified as to a highest and best use value for the Dennis property based upon a "rural residential" permitted use. Appellees' valuation expert testified as to the highest and best use being for the mining of sand and gravel.
 {¶ 55} In the case at bar, the jury was instructed "[h]olding property for future development in anticipation of a zoning change allowing a more valuable use of the property is a permitted use. If an informed and willing purchaser would be presently agreeable to pay more than the justified amount under existing zoning, hoping for a zoning change, that is a fair market value of the property. The jury may consider factors in evidence indicating a likelihood of a zoning change as those factors may reflect upon the fair market value of the property." (5T. at 1246-47). We find this to be an accurate statement of the law under Kebe, supra. Accordingly, appellants' argument premised upon the proposition that only existing zoned uses may be considered as the basis for market value of the Dennis' property in the absence of evidence that is reasonable and probable that applicable zoning will be changed in the foreseeable future is incorrect. (Corrected Brief of Appellant at 21).
 {¶ 56} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 57} Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record. Miller v. Miller (1988), 37 Ohio St. 3d 71.
 {¶ 58} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 59} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 60} Based on the foregoing, although there was conflicting testimony, this court finds that the record contains competent credible evidence from which the jury could conclude that the likelihood exists that the Dennis' property would be rezoned and the necessary permits for mining would be obtainable. Even in the absence of such testimony, it was not error to permit appellee to present evidence at trial that the highest and best use of the property is for a use other than its zoned use. The record contains competent credible evidence from which the jury could conclude that the highest and best use of the property is for the mining of sand and gravel.
 {¶ 61} Accordingly, appellant's second assignment of error is overruled.
 {¶ 62} For the foregoing reasons, the judgment of the Fairfield County Court of Common Pleas, Ohio, is affirmed.
By Gwin, P.J., Farmer, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.