{¶ 96} Being unable to concur with the conclusions reached by the majority, I must respectfully dissent. Although I do concur in the majority findings that the error of the trial court in excluding a person who may have been a relative of defendant and that the error is structural and defense counsel's failure to object does not preclude the issue, I cannot concur with the majority finding that the taking of evidence as to the facts is not a prerequisite in this case. Nor do I concur with the finding that a statement of a deputy sheriff as related to the court only by a prosecutor constitutes sufficient evidence to justify the trial court's finding. The majority opinion states "the prosecutor informed the court that the court room deputy had reported that defendant's family member made a threatening gesture towards Crump during his testimony." No testimony was taken in any fashion to support this double hearsay. Assertions of court officers such as the prosecutor and deputy sheriff are not evidence unless the court swore them as witnesses and they were *Page 36 
subject to cross-examination. The court may not give unsworn statements of court officers special credibility merely because they are court officers. Also, I cannot concur in the finding that theWaller criteria does not apply. The Waller four-prong test necessarily applies to partial as well as complete closure. The fourth prong is that "the trial court must make findings adequate to support the closure." Here, there are no such findings because the trial court based its action upon a double hearsay statement without further evidence even though the double hearsay, if proved, might have justified the action. Apparently, no consideration was given to reasonable alternatives to partial closure. The "triviality standard" if ever applicable, should be applied only in situations where everything occurred in open court and was observed by the court with the court's participation. Here the trial court did not observe the action reported by the double hearsay, nor did defense counsel. Nor is there evidence that the jury did. Whatever occurred was not so disruptive or disorderly as to catch the attention of the court or defense counsel at the time. Accordingly, I would sustain the first assignment of error and remand the matter to the trial court.
 {¶ 97} Also, I find the third assignment of error to be well-taken. During the trial the prosecution played excerpts from tape recordings made to defendant while he was in jail awaiting trial without identification. Defendant's counsel objected to the out-of-context excerpts being played before the jury at least unless the entire conversations were played. None of the excerpts contained an admission by defendant that he was the person who was in the store at the time of the robbery, nor that he was the one who shot the storekeeper who was unable to identify defendant as being the person involved. *Page 37 
 {¶ 98} Evid. R. 401 defines "`[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, all relevant evidence is admissible, and irrelevant evidence is inadmissible. Evid. R. 402. However, Evid. R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 99} "The touchstone of admissibility is whether the evidence is so remote, speculative, or subject to extraneous circumstances, that, even if otherwise relevant, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury; if so, the evidence will be excluded under the parameters of Evid. R. 403(A)." Proctor v. Dennis, Fairfield App. No. 05-CA-82,2006-Ohio-4442, at ¶ 29. "Unfavorable evidence is not the equivalent of unfairly prejudicial evidence." State v. Broadnax (Feb. 16, 2001), Montgomery App. No. 18169, citing State v. Geasley (1993),85 Ohio App.3d 360. "Unfair prejudice is that quality of evidence which might result in an improper basis for the jury's decision." Id., citingState v. Allard (1996), 75 Ohio St.3d 482. "`The underlying premise of the Rule is that certain relevant evidence should not be admitted to the trier of fact where the admission would have an adverse impact upon the effectiveness or integrity of the fact finding process.'" Id., quoting Weissenberger's Ohio Evidence, Section 403.1, at 81-82.
 {¶ 100} When considering evidence under Evid. R. 403(A), the trial court is vested with broad discretion and an appellate court should not interfere absent an abuse of that discretion. State v. Hymore (1967),9 Ohio St.2d 122. "An abuse of discretion `connotes *Page 38 
more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, at ¶ 181 quoting State v.Adams (1980), 62 Ohio St.2d 151, at 157.
 {¶ 101} Here, the challenged evidence consists of isolated statements taken out of context to support appellee's contentions that (1) appellant made conflicting statements about his whereabouts during the time the crime was committed and that those conflicting statements established consciousness of guilt, and (2) appellant placed himself near the scene at the time the crime was committed, i.e., outside Crump's SUV, in contravention of his assertions that he was nowhere near the crime scene.
 {¶ 102} It is patently unfair to admit allegedly incriminating statements made by appellant when those statements are taken completely out of context. The excerpts played for the jury were extracted from fragments of conversations which were extracted from entire telephone calls; however, neither the entire conversations nor the entire telephone calls were played at either the trial or at the hearing on the motion in limine. Further, as appellee admits in its brief, the excerpts were taken from 116 calls made by appellant while he was incarcerated. It is reasonable to assume that appellant made exculpatory statements in at least a few of the calls. As an example, we note that in the conversation from which the first excerpt was drawn, appellant expressly denied any involvement in the crime, stating, "I don't know how they came up with my name. I aint [sic] got nothing to do with this shit." (Tr. 180 insert.) The jury did not, however, hear this exculpatory portion of appellant's call.
 {¶ 103} At the hearing, the trial court acknowledged the jury's difficulty in placing the excerpted statements in context: "[T]his is going to be very difficult, when you're talking *Page 39 
about these snippets * * * it's going to be very difficult for the jury to place them in a context. It's going to be difficult for a jury as finders of the fact[s] to place these in its appropriate context, you have been over these for hours and hours; and to present these to the jury on a moment's notice makes it a lot more difficult for a jury to sort these out than for you fellows. You have been dealing with this for more than a year now." (Tr. 219.) The jury's difficulty was compounded by the fact that appellant exercised his constitutional right not to testify at trial and thus was unable to explain the context in which he made the statements.
 {¶ 104} Further, as to appellee's contention that in the first, second, fourth, and fifth excerpts appellant made conflicting statements about his whereabouts, we note that in none of the excerpts did appellant or the person to whom he spoke definitively assert they were discussing appellant's whereabouts at the time the crime was committed. Admission of these statements may thus have confused the jury or caused it to speculate improperly as to the time frame discussed. Further, assuming that appellant's statements could be construed as statements about his whereabouts at the time the crime was committed, appellant consistently asserted that he was somewhere other than near the crime scene. The statements thus comport with the notice of alibi appellant filed prior to trial in which he asserted that he was not present at the scene of the crime. Similarly, in the third excerpt, the person about whom appellant spoke was not identified. Admission of this statement may well have confused the jury or triggered improper speculation as to the identity of the subject of the conversation.
 {¶ 105} For these reasons, there is no other reasonable conclusion but that the probative value of the excerpted jail calls was substantially outweighed by the danger of *Page 40 
unfair prejudice, confusion of the issues or misleading the jury. As such, admission of the jail calls "would have an adverse impact upon the effectiveness or integrity of the fact finding process."Broadnax, supra. Accordingly, the trial court abused its discretion in admitting the challenged evidence under Evid. R. 403(A) and the fourth assignment of error is well-taken.
 {¶ 106} Moreover, given the evidence presented by appellee, the trial court's error was not harmless. The sole issue was the identity of the perpetrator of the crime, and the evidence against appellant was entirely circumstantial and far short of compelling. Fares, one of appellee's two principal witnesses, described the man who shot Jones as having a "very obvious" full beard, i.e., one that was two to three inches long around his entire face, and wearing a green shirt with a yellow image on it. However, Crump, appellee's other key witness, testified that in the ten years he had known appellant, he had never seen him with a full beard; in addition, he did not testify that appellant had a beard on the night in question. Moreover, appellee did not submit any evidence establishing that appellant was wearing, or even owned, a green shirt like the one described by Fares. In addition, despite the fact that Fares paid at least "some attention" to and came "face-to-face" with the shooter for a "reasonable period of time," he could not identify appellant as the shooter from either of the photo arrays. Indeed, Fares averred that the shooter did not even resemble any of the photographs in either of the arrays.
 {¶ 107} Crump also testified that appellant was only one of a number of people with whom he spoke when he stopped across the street from the carryout. Crump did not know where appellant went after their conversation and did not witness the shooting. Indeed, Crump was already a few blocks away when he heard the gunshots. *Page 41 
 {¶ 108} Further, to the extent that Crump's testimony could be used to establish that appellant was the person with whom he spoke across from the carryout and who later, according to Fares, entered the carryout, we note that Crump had substantial credibility problems. Crump admitted that on the night in question he was high from smoking marijuana. He further admitted that after the police told him he and his cousin were both implicated in the crime, he told the police what he thought they wanted to hear. Indeed, he averred he adopted the description of appellant provided by the police. He further admitted he never told the police of Little C's presence in the SUV.
 {¶ 109} Finally, no physical evidence connected appellant to the murder or even the crime scene. Police never linked appellant to the gun utilized to kill Jones, and Crump testified that he did not see appellant with a gun. No fingerprints, DNA, or other forensic evidence tied appellant to the scene.
 {¶ 110} In the final analysis, the evidence against appellant was not so overwhelming that the trial court's error in admitting the recordings of appellant's jail calls was much less harmless beyond a reasonable doubt. The trial court's error denied appellant his constitutional right to due process and a fair trial. Accordingly, appellant is entitled to a new trial. The third assignment of error should be sustained.
 {¶ 111} As to the second and fourth assignments of error, they are rendered essentially moot if the first and third assignments of error are sustained.
 {¶ 112} Accordingly, I would sustain the first and third assignments of error, find the second and fourth assignments of error to be moot, and remand this matter to the trial court for a new trial upon the merits. *Page 1